Good morning. May it please the court. My name is Gus Flangus and I represent the Appellate's Vegas Diamond Properties, LLC and Johnson Investments, LLC. I'm going to try and reserve about three minutes for rebuttal, if that's OK, Your Honor. First of all, the central issue of this case revolves around whether or not that Section 1821, subsection J of FERIA applies to the facts and circumstances of this case. This case started back in January of 2010 when my clients brought suit against La Jolla Bank, simultaneously sought and obtained a temporary restraining order against La Jolla Bank to keep them from foreclosing upon their properties. This case started way back, not the case, but the fact situation of this case started way back in 2007. My clients were the owners of some very valuable property located on the Las Vegas Strip. They obtained loans from La Jolla Bank against the property secured by the properties in the amount of approximately $26 million. The purpose of the loans was to provide a source of funds for another individual by the name of Dyson, who is not named as a party in this case. I think we're familiar with the facts of the case, and so the question would be, why wasn't the FDIC's actions, which was to foreclose, to go forward with the foreclosure, why wasn't that the actions of the receiver? Because they were outside the scope of a receiver, and I'll cite the Sharp case, which was decided, was ruled upon by the Ninth Circuit. In the Sharp case, there was a settlement agreement between the Sharps and the bank, and pursuant to that settlement agreement, the Sharps were going to receive $510,000 from the bank via a wire transfer. Simultaneously, the Sharps were required to put a reconveyance of the deed of trust back to the bank. Instead of a wire transfer, the bank issued cashier's checks. Well, let me just, you know, see here, isn't the Sharp case clearly distinguishable here? There was a contract in the Sharp case. There's no contract here. I don't think it's distinguishable at all. I think it's pretty close on point with here for the following reasons. In the Sharp case, as I was stating, instead of doing the wire transfer, they issued cashier's checks. Shortly after issuing cashier's checks, the FDIC took over the bank, and then they refused to honor those cashier's checks. Was the Sharp a customer of the bank, or was the Sharp just the third party? The Sharps were a third party. They weren't a customer of the bank. And they just, they had a settlement agreement, and they issued the checks, and then the FDIC canceled the checks in breach of its settlement agreement. And then tried to record the reconveyance. But your clients were customers, right? They had a loan relationship with La Jolla. But I think the Sharp case stands for the fact that they said, look, you're not allowed to breach the contract, FDIC. You're not allowed, you know, regardless that you've got all these powers, you're not allowed to breach that contract, because that is outside the scope of the receivership duties to breach the contract. Where is the contract in this case? Instead of a contract in this case, Your Honor, what we have here is a loan agreement between the parties. It sort of seems like the core thing that FDIC was supposed to come in to do, to marshal the assets, which was the collateral, the loan agreement, the collateral. It's in default, and it forecloses. It's hard to think of anything that's more core to the FDIC's function in receiving, being a receiver for a failed bank. And you said the buzz word, marshal the assets. Marshaling the assets is a lot different than disposing of an asset that's disputed. And this asset's clearly disputed because of the fraud brought on by La Jolla Bank in the first place. Aren't all of the assets going to be disputed, though? I mean, wouldn't that pretty much officiate what Congress intended? Not all assets are disputed in these type of situations. There are some, and that was an issue that was brought up by the district court judge. Are we going to open the floodgates for clever pleading and the like? But I would hold, I would suggest to the courts that in these type of cases, banks generally do not owe a duty to a borrower unless there's special circumstances present. And this was litigated down below. And so far there are special circumstances present in this type of case. Well, there's a dispute, and there's been no ruling by any court. There's been no ruling by any court, and that's the core central issue of this case. My clients are going to lose their property without an adjudication by any tribunal. In fact, let me roll back, because they've already lost the property in the sense that it's been sold. And I know the FDIC sent us a letter saying, well, now they think that maybe this case isn't moot. But I guess I'm not that persuaded. In Sharp, we said, look, the Sharp's claims for injunctive relief are moot. The complaint sought to enjoin the FDIC from recording the instruments delivered by the Sharps, but the FDIC recorded them, so it's moot. That was the extent of the analysis in Sharp. Here there was a dissolution of the TRO, and then the sale happened. It seems like your clients would have the ability to challenge the sale to make a claim, to go through the administrative process. But I'm having trouble understanding how it's not moot and how you would say, well, there's still the ability to say that the dissolution of the TRO was erroneous. The sale itself could be unwound. Well, the sale could be unwound. Under Nevada law, it could be unwound. But that's not what you're challenging here. You're not challenging the sale. You're challenging the dissolution of the TRO. Correct, Your Honor. I mean, we're several steps away from the sale of the property. Well, we're kind of caught in a catch-22 situation, because if we don't get the ruling from here, the property is gone all the way. We can't unwind it, because if you say we cannot enjoin the FDIC, we could probably unwind the sale, but it's just going to turn around again, properly notice it, and sell it again, and there's nothing we can do about it. So we're stuck in a vicious cycle here. Well, you're in a situation a lot of other people are going to be in when a bank goes down, because usually when a bank goes down, the FDIC takes it over. It's a mess, and what you want to do is preserve your particular target so that you can get relief, but that's going to be true of everybody else that has a claim. Well, the facts and circumstances of this case are different than a lot of others, because there's fraud on the part of La Jolla Bank. Clearly, this has not been adjudicated as such, but the allegations are there. There's fraud on the part of La Jolla Bank, too. You might not be the only one. We may not, Your Honor, but again, we denied that remedy because someone else might be bringing the same type of suit. The bottom line on this is that in the Sharp case, it was a breach of contract, and they were acting outside of their scope in continuing with the breach of contract. Now, I'll read you a passage from Sharp where Sharp says that the FDIC steps into the same shoes as the bank, and it's with the same rights and obligations as the bank, and then it goes on to say it shields only the FDIC. Could you finish just with my question about the mootness and why the language in Sharp saying we can't address their claim to enjoin the FDIC from recording instruments because they've already been recorded and why we're not in exactly the same situation here? There wasn't enough information in Sharp reading the opinion to determine whether or not that that could have been unwound in the first place under the state law in that action. In our action, the law is clear that this could be unwound because the FDIC took position of the Vegas Diamond property. Well, why wouldn't the recording of instruments being with the recording of reconveyance be unwound? I couldn't tell you as far as the Sharp case goes, Your Honor. Again, there's just not enough facts that were presented in the opinion that would communicate to me why that could not be unwound. Aren't you appealing the sale, the foreclosure sale? You're not appealing the dissolution of the TRO anymore? I mean, isn't what you need to do is to say that the sale was in error? No, we're appealing the dissolution of the TRO because the sale has already gone forward. We have filed another action to try to unwind the sale. But if we say, you're right, the district court was wrong in dissolving the TRO, there's nothing to RO anymore. So there's nothing left. It doesn't matter whether we say it's erroneous or not. It becomes advisory to the district court. We would also have to go on and say, not only did you err in dissolving the TRO, but now we want to unwind time, and that's what I'm puzzled by. Again, I think we're kind of caught in the catch-22 here because, again, if you... Well, you may have problems, but what are we supposed to do? No, I'm trying to communicate that to you. We definitely have problems in this case. There's no doubt about it. But the problem is, if you come back and you affirm the district court that they cannot be restrained, then we go into the district court and we unwind the sale. So the sale comes back up, and now we've got the property again. The FDIC again will start the foreclosure proceeding on it and do it correctly this time, and therefore there's nothing we can do about it because you have already ruled on it and it becomes the law of the case that they can't be restrained from going forward with the foreclosure. What's the FDIC doing correctly in the foreclosure of the first time around? You said you'd go back and then the FDIC would do it correctly. We felt that the FDIC failed to properly notice the foreclosure under Nevada law, and that's one of the issues. We may or may not prevail in that action, but let's assume that we do prevail in that action. Again, an adverse ruling from this panel forecloses that possibility altogether because all it does, if we resurrect it, we again will just lose the property to a foreclosure. Don't you have a right of redemption? No, not on this type of sale. So in Nevada for a trustee's sale, there's no statutory state right of redemption? No, ma'am. The right of redemption only applies if it's a judgment foreclosure, meaning there was a judgment and you foreclosed on a piece of property pursuant to the judgment. Speaking of your catch-22, if we said 821J restrained, the district court was correct, 821J restrained it, then you have what you describe. If we say it's passed, there's nothing for us to rule on, then you don't have that problem because we've made no ruling on 821J. We've just said it's moot. So how does that put you into a catch-22? Without any ruling from you? We say it's moot because there's nothing for us to rule on because there's nothing that the TRO any longer applies to or would apply to. And then we'll be back here again because if I do unwind the foreclosure, they will again start the foreclosure proceedings, and then again I will go for a temporary restraining order. The district court will then in turn say that they can't be restrained pursuant to 1821J. And then you've got to stay pending appeal. And then I'll try to seek a stay, and I may or may not be successful on the stay, and we just keep rolling around here. Do you want to save the rest of your time? Yes, Your Honor. Could I just ask just one question? What is the significance of the fact that the FDIC purchased the property rather than selling it to a third-party purchaser? Under Nevada law, they took the property with notice and it could be unwound. They're not a bona fide purchaser for value. If it was sold to a third party, the argument could be made that the purchaser was a bona fide purchaser for value, and we may not be able to unwind that portion. Thank you. Good morning. May it please the Court, I'm Scott Watson with FDIC's Appellate Litigation Unit, here today on behalf of the FDIC as the receiver for La Jolla Bank. And I think that the opening argument by my esteemed friend really focused on the two issues that should govern the outcome of the case. The district court lacks subject matter jurisdiction because foreclosure is a power of the receiver, and the statute, by its plain language, removes subject matter jurisdiction for any order that would restrain or affect the exercise of that power by the FDIC as receiver. And the second is the question of what's really trying to be done here. What's trying to be done here is that Vegas Diamond is trying to preserve some kind of special targeted relief or somehow preserve relief for what it really is still entitled to pursue, and that is damages to the administrative claims process and the subsequent judicial review of its claims. And so in this case, Congress has foreclosed the remedy that they seek here, and that's really to set aside a particular property by somehow skirting Section 1821J. As for foreclosure being a power of the receiver, I really believe that that's beyond dispute and that, in fact, what Vegas Diamond is trying to do is create even an exception to that. But the courts that have plainly recognized that foreclosure is a power of the FDIC as receiver and have done so in the context of Section 1821J and have held that that can't be restrained are the Freeman Court in the District of Columbia Circuit. The broad powers as a receiver include the power to foreclose on the property of a debtor that's held by a failed bank as collateral, and no court may enjoin the exercise of that power.  How about the Ninth Circuit? The opposing counsel cites Abbott and Sharp, in which case, in both cases, we said 1821J was not a bar. First of all, I'd like to address them in reverse order if I could, because Sharp was raised during the opening argument. The Sharp case, as the court questioned counsel, is about the power of a receiver in that case to breach a contract without repudiation. It doesn't in any way involve foreclosure. It doesn't analyze those powers of the receiver that are statutorily enumerated, which include the plain power to marshal and distribute the assets and to collect on obligations. Sharp dealt with whether the FDIC could breach a court-approved settlement that envisioned a simultaneous exchange by the parties, that never envisioned a creditor relationship of any kind, and after failure, the FDIC further breached that by going ahead and recording the documents that were to be transferred by the parties. In that case, this court determined that such a breach in the absence of a repudiation, which is also an expressed power of the receiver, was the exercise of a power or function beyond that of the receivership. But this involves a foreclosure by the FDIC of a property that's held by the FDIC as collateral and as a security interest for an obligation of debtors. And that's squarely within the scope of the FDIC's powers. And an order enjoining that plainly would restrain or affect the FDIC in exercising that. And what I don't understand is that at first in your briefs you claimed this case was moot, and then later briefing it seems you're indicating it's not moot. Why is that? Well, Your Honor, the burden is on us to establish mootness as the party coming forward and claiming that it's moot. And on the basis of unqualified statements that were made by Vegas Diamond in its motion for an emergency stay to this court, a stay that was denied by this court, in that stay they made unqualified statements that a foreclosure would moot this case. On the basis of that, we filed a suggestion of mootness with the court. I am not inclined to want to make the arguments on behalf of Vegas Diamond here, but if this court determined that in making a ruling on the district court's propriety of applying Section 1821J and remanding the case for further proceedings consistent with that, if the court determined it properly could do that under Section 1292A, then we can envision that being some form of effective relief. What is that relief? We have to determine our own jurisdiction, and if it's moot then we can't rule because the Constitution doesn't let us. So if there's nothing we can do because what's before us is an argument that the district court was wrong in dissolving the TRO, but the TRO has nothing left to restrain. There was no stay pending appeal, so the act that was going to be restrained is already done. So what's left, and why isn't it moot? I believe that Section 1292A in the jurisdiction of this court to review the dissolution of the TRO in this case and the denial of a preliminary injunction is the limit of the jurisdiction of the court, and it would be an advisory opinion to conclude that the district court improperly applied Section 1821J in dissolving the TRO because that has been dissolved. So if this court were to determine that its jurisdiction is limited under 1292 to review the dissolution of that TRO, I think the case would be moot because the remand in that case would be an advisory opinion. Now the advisory opinion, if the court found that it did have jurisdiction, would afford Vegas Diamond, potentially afford Vegas Diamond relief because as counsel pointed out during his argument, if they were to proceed in this case in any way to seek to unwind the foreclosure, they are going to be foreclosed by the law of the case by the breadth of the district court's determination with regard to 1821J. But in the strictest sense, a determination by this court of this appeal would involve an advisory opinion to the district court, and in that case, I think it would moot the appeal. However, as we acknowledged in our response to this court on the issue of mootness, it is unsettled in the analogous question under bankruptcy law just what test might be necessary for a party to unwind the sale and whether that would be available at all. But in the strictest sense of issuing an advisory opinion, I think that would be moot. If the court were to rule on the merits of this appeal, though, as I pointed out, foreclosure is a power of the FDIC as a receiver, and the Sharpe case is plainly distinguishable. The Sharpe case doesn't involve the FDIC's receivership or dominion at all over the assets of the failed institution that it controls and marshals and disposes of as the receiver. In the Abbott Building case, which you also asked about, Your Honor, Abbott Building was decided after FIREA that it was litigated as a pre-FIREA case under the FSLIC's statutory counterpart to Jay, which had very similar language. But at that time, the FSLIC took the position that there was no review of its determinations, and the only question presented to this court in the Abbott Building case was whether it was entirely foreclosed by the 1821J statute from ever getting to the merits of whether a transfer had ever occurred. And in that case, again, Abbott Building never addressed or went near injunctive or other equitable relief. Rather, it had to examine, and I think the court lays out in Abbott, here's the question presented to us, whether the statute precludes us from reaching any determination on this. And then it went on to say, we have reached a determination. We do have jurisdiction to make a determination. And then, of course, on the merits, it said it wasn't available. And even there, this court limited, expressly limited, its decision in that case to determine whether a foreclosure that had transferred it to the FSLIC had been proper. But it said that it wanted to avoid any understanding that it was opening up the door to careful pleading that would claim or question whether an asset went into the receivership estate. Because ultimately, all of these assets that are taken over by the FDIC as receiver are subject to some dispute. And the position that's taken here by Vegas Diamond is if it's subject to some dispute and it hasn't been adjudicated, it's not in the receivership estate. That contention fails. And that case was addressed by the 11th Circuit recently in the Bank of America decision, which we provided the court in our briefs. And in Bank of America, Bank of America claimed, we had a bailment with Colonial Bank. We withdrew our bailment and we're entitled 100% to those funds. There is no bailment. A district court agreed and issued a TRO. FDIC moved to dissolve that upon its appointment. The district court refused. And the Court of Appeals said it was proper and remanded the case to order the dissolution of the TRO because the FDIC in marshalling, reviewing, and determining the disposition of those assets was plainly functioning as a receiver. And that was within the receiver's powers. In the Third Circuit gross case, which we also cited, again, the contention on the part of the claimant was that the money was being held by the receiver and wasn't the receiver's property. The receiver was allowed to withhold $100,000, but the receiver was withholding $500,000. The Third Circuit, nevertheless, said the disposition of that property is a power or function of the receiver, which Section 1821J precludes the courts from addressing equitably. In each of those cases, though, as in the case here, what's provided for Vegas Diamond is the opportunity to seek a remedy. And the remedy is money damages. And Congress plainly provided for that. It gives them an administrative claim opportunity, then a de novo judicial determination of that claim, and then they're entitled to receive money damages for whatever they've suffered. But in this case, they are trying somehow to preserve this property as a special pool from which they could recover assets. Well, isn't that because they think the property's worth a lot more than... Absolutely, Your Honor. And in the case of Bender, which was cited by them in their brief, the Bender case decided by a district court in Florida, and later by the Eleventh Circuit, held that it would be improper. And in the case of the district court, where there was a TRO, or they sought a TRO, that they could not enter that kind of equitable relief to segregate some separate pool for recovery. And rather, the proper vehicle for recovery was administrative claim, review by the courts, and if successful, money damages paid as a receiver certificate. I'd like very quickly, if I can, to address the one issue that is also raised as an argument to create an exception. Excuse me, before you go on to that. Yes, sir. But the pool, of course, gets diminished. Let's say this $17 million property is only worth $3 million. Let's say that all the other properties at this bank had a similar thing. And then whatever the pool is that's left, even though you get an award of $15 million, if the pool is only of a certain size and you share in that pool, then you're out the rest, right? That's the way it works. That would be the way it works if the pro rata distribution of the receivership estate left nothing to the general unsecured creditors. Which usually is the case. Your Honor, I'm not certain of the percentages. I have worked on cases where general unsecured creditors received 100 cents on the dollar, as well as other cases all the way down to cases where there were no funds. My clients were never that lucky, but go ahead. But if I could address the point about it being within the receivership estate. We had the opportunity to brief this a second time in the opposition to the emergency motion for stay. But in the case of fraudulent inducement that ends up creating an obligation, notes, and securities like this case, those notes and security interests do transfer to the receivership estate. The Supreme Court plainly decided that in the Langley case, where the Langley's claimed that in that case, the FDIC was not entitled to assert Section 1823E, the bar against unrecorded conditions and agreements. The Langley said, well, it never entered the receivership estate, so that statute shouldn't bar me from bringing my fraudulent inducement claims. The Supreme Court rejected it out of hand. And it said that the bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute title or interest in the note. And in this case, that's what happened here. This court has also, like every other circuit to address it, has found that fraudulent inducement claims, like those raised here on the part of Vegas Diamond, are absolutely barred by federal law. Section 1823E requires, in the case of a fraudulent inducement, the party that entered into the agreement without fully recording its conditions to repayment is the party that bears the burden and can't raise the issue of fraudulent inducement or the conditions to repayment based on fraudulent concealment. This court decided that in the case of Brookside Associate v. Rifkin. And fraudulent inducement generally was addressed by this court in RTC v. Kennelly. But reporters are replete with cases where a party has brought a fraudulent inducement claim and they're barred from raising it as any kind of defense. And in this case. Now you're over time. My apologies, Your Honor. Thank you very much. Thank you, Your Honor. I'd just like to address a couple of points. Going back to the moodiness issue, this is, I don't think, would be an advisory opinion because the FDIC currently has the property of Vegas Diamond. So if you were to issue a, if you were to reverse the district court, we're just going to return it back to the status quo as to that. The next, we're not trying to skirt Section 1821J with this action. What we're saying is that these loan transactions between my clients and La Jolla Bank were fraught with fraud, replete with fraud. There's never been any type of adjudication on that. We're not saying that the FDIC can't defend it. We're not saying the FDIC can't hold the property. We're just saying the FDIC can't transfer that property out where we can't reach it again. And that's all we're trying to say here, to give us a day in court to allow some tribunal to say yes or no on whether or not there was fraud on the part of La Jolla Bank sufficient enough to render their security interest in my client's property invalid. Again, going back to Sharpe, Sharpe says this, 1821J shields only the exercise of powers or functions Congress gave to the FDIC. It doesn't bar when the FDIC has acted beyond or contrary to its statutory prescribed constitutionally permitted powers or functions. Again, if you look at what Sharpe says, they step into the same shoes as the failed institution. And stepping into the same shoes, because La Jolla Bank committed fraud,  they have to defend that fraud, of course, but they certainly shouldn't be able to capitalize on that fraud and allow those property to be transferred out. Because to do so would be just perpetrating the fraud, and it allows them to do a lot more than what La Jolla Bank could do. And again, to allow that property to go to foreclosure is beyond their scope of duties. As to Bank of America, in the Bank of America case, they didn't try to dispose of the property. They were marshalling the property. And I agree with what counsel said. The Bank of America case was a correct ruling under that limited set of circumstances because they were holding a billion dollars in funds and interest for Bank of America. That was Colonial Bank originally. And when the FDIC took it over, somebody, as the court said, had to marshal those assets together, and the FDIC was the only person to marshal it. And they said that there were remedies available to try to get that money back to Bank of America. They hadn't even tried yet. And I think that's the distinction between the cases. Well, you said that the FDIC can't get the benefit of 1821 because of the fraud involved. Well, there's two different things. There's no suggestion here that the FDIC itself has been a rogue actor in this. The only fraud that they've picked up is the fraud from what the bank allegedly did. And that's going to be true in virtually every one of these cases. That's why the banks go down. So that wouldn't preclude the FDIC from using it. It's only if the FDIC itself were a fraud actor that the 1821 defense couldn't apply. But I think stepping in the same shoes, La Jolla Bank would probably not be allowed to foreclose on that property when the injunctions would stand because of their element of fraud involved in these loan transactions. Well, that's why you have receivers, though, when some organization has not worked well, and you have all sorts of fraudulent activity by that entity. So the FDIC is almost always going to be in that position, so you can't impute the fraud to them to defeat 1821 as to the FDIC. They're going to be in that position, of course, but do we allow the actions of La Jolla Bank to be whitewashed because the FDIC took over as a receiver? I think I'm out of time. Thank you. Thank you. Appreciate it. Okay. This case, Vegas M and Properties v. La Jolla Bank, is submitted and we're adjourned.
judges: Piersol, Nelson D. W., Ikuta